IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ARCHITECTURAL INGENIERIA SIGLO XXI, LLC, a Florida limited liability company, and SUN LAND & RGITC LLC f/k/a SUN LAND & RGITC, CO., a Florida limited liability company,

    Plaintiffs,

v.

CASE NO.:

DOMINICAN REPUBLIC, a foreign state, and INSTITUTO NACIONAL DE RECURSOS HIDRAULICOS, a foreign government agency,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, ARCHITECTURAL INGENIERIA SIGLO XXI, LLC ("ARCHITECTURAL"),[1] and SUN LAND & RGITC LLC f/k/a SUN LAND & RGITC, CO. ("SL & RGITC"), sue Defendants, the DOMINICAN REPUBLIC, a foreign nation, and INSTITUTO NACIONAL DE RECURSOS HIDRÁULICOS ("INDRHI") (collectively, the "Defendants"), a foreign governmental agency, and allege:

### PRELIMINARY STATEMENT

1. This is an action for breach of contract and, in the alternative, unjust enrichment, based on an agreement for the construction of an irrigation infrastructure project in the Province of Azua, Dominican Republic. The Dominican Republic and INDRHI entered into a contract

---

[1] ARCHITECTURAL was originally organized under the laws of Florida as "Architectura Ingenieria Siglo XXI, LLC" in March 2001. After noting the existence of an error in the writing on the Contract and Purchase agreements designating the party as "Architectura**l**," the company formally changed its name to "Architectural Ingenieria Siglo XXI, LLC."

with Plaintiffs who are based in Miami, Florida. Plaintiffs acknowledged and diligently performed the contract until Defendants unjustifiably and unilaterally terminated the contract and failed to pay ARCHITECTURAL the agreed upon price for work completed. As a result of Defendants' breach, Plaintiffs have been substantially injured.

## PARTIES

2. ARCHITECTURAL is a limited liability corporation organized and existing under the laws of the State of Florida that at all times material hereto maintained an office in Miami-Dade County.

3. SL & RGITC is a limited liability corporation organized and existing under the laws of the State of Florida that at all times material hereto maintained an office in Miami-Dade County.

4. The Dominican Republic is a foreign nation.

5. INDRHI is a governmental agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603 (b). Specifically, INDRHI was organized and exists by virtue of the laws of the Dominican Republic under the executive branch, and functions as an organ of the Dominican Government to plan, execute, operate, and construct hydraulic work in the country. INDRHI maintains its principal place of business at Avenida Jimenez Moya, at the corner with Juan de Dios Ventura Simo, Santo Domingo, Dominican Republic. INDRHI is not a citizen of any State of the United States, but transacts substantial and not isolated business in the United States, by contracting with parties in the United States, specifically in the State of Florida.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the Dominican Republic under 28 U.S.C. §§ 1330, 1602-11, the Foreign Sovereign Immunities Act (FSIA). Under 28 U.S.C. § 1605 the Dominican Republic, as a foreign state, is not immune from the jurisdiction of the

courts of the United States because of its commercial activity carried on in the United States, activity performed in the United States in connection with a commercial activity outside of the United States, or activity conducted outside the United States that was taken in connection with a commercial activity inside of the United States that caused a direct effect in the United States.

7. Additionally, the Court has original subject matter jurisdiction under 28 U.S.C. § 1330 because this action involves a dispute against INDRHI, an agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603 (b), which is also subject to the commercial activity exception under 28 U.S.C. § 1605 (a)(2).

8. Moreover, Defendants submitted themselves to the jurisdiction of this Court pursuant to the contract (herein later described as the "Protocolo," Purchase Agreement, and addenda and amendments thereto) between the parties, true and correct copies of which are attached hereto as "**Exhibits A and B.**" Specifically, the "Protocolo" provides that "all the parties irrevocably agree that for any demand, action, or legal procedure that arises from or relates to this Agreement or the notes or the contemplated transactions, they can be called to the United States, in either the federal or state court of Florida, in the county of Miami-Dade." **Exhibit A**, ¶ 23.5.1.1.1; *see also* **Exhibit B**, ¶ 23.

9. Furthermore, INDRHI expressly and irrevocably waived its right of sovereign immunity with respect to such activities or in any legal proceeding arising out of or relating to the Agreements. **Exhibit A**, ¶ 23.5.3.

10. Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), (f)(1) and (3).

## FACTS COMMON TO ALL CLAIMS

11. INDRHI is a governmental agency under the executive branch of the Dominican Republic government. INDRHI is the governmental authority in the Dominican Republic

responsible for the planning, execution, operation, and construction of water-works projects within the Dominican Republic.

12. In 2000, INDRHI proposed the construction of certain irrigation infrastructure projects in the Province of Azua, Dominican Republic. These projects were commonly referred to as the Azua I and II[2] Projects (the "Projects"), and were intended to assist the Azua Province secure scarce resources of water needed for agricultural development. Each of the two projects was intended to provide irrigation to an area totaling 3,000 hectares (6,000 hectares in total).

13. In 2000, INDRHI and the Technical Secretary of the Presidency invited contractors to submit bids for the Azua I and II Projects. The bids required the Projects to be "Turn Key Projects," including providing the required financing. ARCHITECTURAL invited SL & RGITC to participate in the bid with it by arranging the financing component.

14. ARCHITECTURAL's bid of **USD $51,777,321.00** for the Azua II Project was selected by INDRHI as the winning bid.

15. On November 20, 2001, then President of the Dominican Republic, Hipolito Mejia, under Executive Order Num. 691-01, granted authority to the Technical Secretary of the Presidency and to the Executive Director of INDRHI to enter into the following agreements on behalf of the Dominican State in furtherance of the development of Azua II: (1) a financing agreement with the Florida Export Finance Corporation ("FEFC") and other commercial banks, with the guarantee of the Export-Import Bank of the United States ("Ex-Im Bank"), to obtain the funds necessary to complete Azua II; and (2) a Commercial Agreement with ARCHITECTURAL to provide services to complete Azua II.

---

[2] The Azua II Project was formally known as "Proyecto Agricola Azua II – Pueblo Viejo."

- 4 -

## "PURCHASE AGREEMENT" – SL & RGITC ENGAGED

16. Due to the fact that SL & RGITC was an authorized agent of Ex-Im Bank, through which the financing guarantees were to be obtained, on December 7, 2001, and February 19, 2002, the Technical Secretary of the Presidency and INDRHI, respectively, executed a "Purchase Agreement" with SL & RGITC in the amount of **USD $51,777,321.00** to purchase and export to the Dominican Republic, on behalf of INDRHI, all products and services necessary to construct Azua II.  Through the Purchase Agreement, INDRHI agreed to purchase all equipment needed for Azua II through SL & RGITC, and authorized SL & RGITC to engage the services of others to construct the project on behalf of INDRHI. It was also agreed that the construction rights could be transferred to successors and assigns. A true and correct copy of the Purchase Agreement is attached hereto as "**Exhibit B**."

17. The National Congress, on behalf of the Dominican Republic, approved the Purchase Agreement on October 28, 2002, by means of Resolution Number 174-02, thus ratifying the Purchase Agreement.

18. On April 11, 2003, SL & RGITC, on behalf of INDRHI and under the terms of the Purchase Agreement, entered into a contract with ARCHITECTURAL to provide the studies, designs, and the construction of Azua II.  A true and correct copy of the SL & RGITC-ARCHITECTURAL Agreement is attached hereto as "**Exhibit C.**"

## CONTRACT NO. 10375:  ARCHITECTURAL ENGAGED

19. Back on March 7, 2002, INDRHI and ARCHITECTURAL also entered into Contract No. 10375, to "provide the studies, designs and construction plans of Azua II- Pueblo Viego Agricultural Development Project, and the Contractor [ARCHITECTURAL] engages to supply any and all materials, equipment, labor, engineering services and technical direction necessary for the execution of the Project." A true and correct copy of Contract No. 10375 is

attached hereto as "**Exhibit D.**" Contract No. 10375 was entered into, and to be performed, in conjunction with the Purchase Agreement between INDRHI and SL & RGITC described in Paragraph 16, above.

20. Under the terms of Contract No. 10375, INDRHI agreed to pay ARCHITECTURAL a maximum amount of *USD $51,777,321.00* "to cover expenses and investment of total works, equipment and services required for the implementation of the entirety of the works, equipment and services" for Azua II.

### CREDIT AGREEMENTS: SUNTRUST BANK AND SL & RGITC

21. On September 15, 2003, the Dominican Republic entered into a Credit Agreement with SunTrust Bank, as lending agent for the Ex-Im Bank of the United States, for a *USD $43,604,103.00* loan for Azua II.

22. Contemporaneously, the Dominican Republic also entered into a Credit Agreement with SL & RGITC whereby SL & RGITC would be responsible to secure additional financing in the amount of *USD $8,144,128.00*, which was equal to fifteen percent (15%) of the value of the bid for Azua II.

### SECOND CONTRACT: THE "PROTOCOLO"

23. On February 13, 2004, INDRHI, SL & RGITC, and ARCHITECTURAL entered into a comprehensive second contract, intending to replace Contract No. 10375, and to establish the protocol for the execution of the Purchase Agreement and constructing Azua II (the "Protocolo"). A true and correct copy of the "Protocolo" is attached hereto as "**Exhibit A**"[3] [hereinafter, the "Protocolo," "Purchase Agreement," and any addenda and amendments thereto may sometimes be referred to collectively as the "Contract"].

---

[3] The "Protocolo's" complete name is "Protocolo para la Ejecución del Acuerdo de Compra, de Fecha 19 de febrero de 2002, para la construcción del Proyecto de Desarrollo Azua II – Pueblo Viejo."

24. The structure of transactions and relationships of the parties created by the various agreements comprising the Contract, and the related agreements, can be depicted in the diagram set forth below:



## PROJECT WORK COMMENCES

25. On March 16, 2004, ARCHITECTURAL received and accepted INDRHI's order to initiate work on Azua II under the Contract, and ARCHITECTURAL diligently worked on Azua II providing studies and designs, and providing other services as directed by INDRHI until August of 2004.

26. On June 14, 2004, ARCHITECTURAL submitted to INDRHI the first progress report and partial invoice for work performed from March 16, 2004 through May 7, 2004.

27. On August 13, 2004, INDRHI ordered ARCHITECTURAL to suspend its project designs and all work on Azua II. No reason was given for the suspension.

28. Subsequently, on November 15, 2004, INDRHI directed ARCHITECTURAL to re-commence its work.

29. For the next thirty (30) months, INDRHI engaged in an intermittent "start and stop" approach toward the Project, repeatedly asking ARCHITECTURAL to stop work, then to re-commence work, without explanation. This "start and stop" approach delayed completion of Azua II and substantially increased ARCHITECTURAL's and SL & RGITC's operating costs.

30. By early 2006, the Azua II Project was behind schedule, but INDRHI contemplated expanding the scope even though it was evident that the existing financing was insufficient to complete Azua II.

## THIRD CONTRACT

31. As a result of the existing conditions, the parties signed an Agreement on March 10th, 2006, with the purpose to update and define the scope of Works to be executed to complete the Project totaling ***USD $106,105,742.00***. A true and correct copy of the Agreement is attached hereto as **"Exhibit E."** The Plaintiffs shared the terms of this Agreement with Constructora Queiroz Galvao, S.A., a Brazilian company, while exploring the possibility of obtaining its assistance on the Project. Constructora Queiroz Galvao, S.A. later conspired with the Defendants to have Constructora Queiroz Galvao, S.A. take over completion of the Project, cutting Plaintiffs out altogether as more particularly described below in Paragraphs 47 and 48.

32. Subsequently, in June of 2007, the Dominican Republic finally secured the required financing to continue Azua II, and that same month instructed ARCHITECTURAL to re-commence work on the Project, yet again.

33. ARCHITECTURAL submitted a progress report and a partial invoice to INDRHI for work performed from June 14, 2007 through September 28, 2007, in the amount of ***USD $3,866,856.44.*** INDRHI approved and paid in full the invoice.

34. On December 5, 2007, INDRHI approved an ARCHITECTURAL progress report and partial invoice for work performed in October and November 2007 and paid ***USD $2,172,098.35.***

35. On January 16, 2008, INDRHI approved an ARCHITECTURAL progress report and partial invoice for additional work performed in November 2007 and paid ***USD $288,957.96.***

36. During 2008, INDRHI approved five (5) progress reports and partial invoices for work performed in the following amounts: ***USD $1,112,181.96*** (Invoice 18-C); ***USD $1,017,712.14*** (Invoice 19); ***USD $183,523.72*** (Invoice 20); ***USD $174,574.20*** (Invoice 21); and ***USD $182,020.28*** (Invoice 22), all of which remain unpaid.

## AMENDMENTS TO "PROTOCOLO"

### First Amendment

37. On November 6, 2007, INDRHI amended the "Protocolo" (Addendum No. 1) and contracted ARCHITECTURAL to perform additional work for structural problems in the Yaque del Sur Canal, which provided the water for the irrigation system ("Sur Canal Project"),

for **RD $63,385,017.34.**[4] A true and correct copy of Addendum No. 1 is attached hereto as **"Exhibit F."**

38.  ARCHITECTURAL performed part of the work contemplated under Addendum No.1 and presented INDRHI with an invoice for **RD $40,067,510.63**,[5] which INDRHI paid in full.

### Second Amendment

39.  INDRHI and ARCHITECTURAL subsequently signed an Addendum No. 2 to the "Protocolo" on January 24th, 2008 after existing irrigation systems in the Province of Azua were damaged by Tropical Storm Noel. ARCHITECTURAL performed the contracted for work and submitted invoices to INDRHI totaling **RD $44,511,933.86**,[6] which was paid in full by INDRHI. A true and correct copy of Addendum No. 2 is attached hereto as **"Exhibit G."**

### Third Amendment

40.  Just a month and a half after Tropical Storm Noel, Tropical Storm Olga passed through Azua and caused damages to the Ysura Canal, and INDRHI entered into Addendum No. 3 with ARCHITECTURAL to repair the canal. ARCHITECTURAL performed work under the contract and submitted a partial invoice for **RD $55,132,002.47**. INDRHI made a partial payment and still owes ARCHITECTURAL **RD $18,377,582.60**.[7] A true and correct copy of Addendum No. 3 is attached hereto as **"Exhibit H."**

---

[4] The cost of Addendum Num. 1 was expressed in currency of the Dominican Republic. ***RD $63,385,017.34*** equals approximately ***USD $1,690,267.12***.
[5] ***RD $40,067,510.63*** equals approximately ***USD $1,068,466.93***.
[6] ***RD $44,511,933.86*** equals approximately ***USD $1,186,984.90***.
[7] ***RD $18,377,582.60*** equals approximately ***USD $498,727.00.***

## DOMINICAN REPUBLIC APPROVES AMENDMENT TO CREDIT AGREEMENT

41.     On June 26, 2008, President Leonel Fernandez Reyna, signed Executive Order, Number 98-08 by which he authorized the Dominican Finance Minister to sign on behalf of the Dominican Republic an Amendment to the Credit Agreement that had been originally signed back in September of 2003.

42.     On September 4, 2008, the Dominican Finance Minister and representatives of Sun Trust Bank and Ex-Im Bank signed Amendment 3 to the Credit Agreement whereby the financing period was extended through October 15, 2009, a time period deemed sufficient by the Dominican Republic to complete Azua II.

43.     On October 28, 2008, the Executive Director of INDRHI sent a written communication to Dr. Abel Rodriguez del Orbe, legal counsel to the Dominican Executive Branch, in which, besides setting forth the anticipated benefits of Azua II, stated that: (a) ARCHITECTURAL's work on the project had been to INDRHI's satisfaction having met all of their contractual obligations as the contractor for the project *even though some of their invoices remain unpaid*; and (b) SL & RGITC, which served as intermediary and supervisor of the purchase of products and services in the U.S. market, had satisfactorily performed its work. A true and correct copy of the letter is attached hereto as "**Exhibit I.**"

## CONTRACT TERMINATED

44.     On February 13, 2009, the Executive Director of INDRHI advised SL & RGITC in writing that it was intending to terminate the "Protocolo" citing *Force Majeure* as the reason. INDRHI relied upon *Force Majeure* as a pretext in an attempt to justify their purported termination of the "Protocolo," knowing all the while this was a sham excuse.

45.     On June 18, 2009, INDRHI sent another written communication to ARCHITECTURAL advising that it was also terminating Addendums Nos. 1 and 3, although ARCHITECTURAL was still completing the two infrastructure repair projects.

46.     Then, more than a year later, ARCHITECTURAL received another written communication from the Executive Director of INDRHI dated October 21, 2010, formally terminating the "Protocolo," concocting yet another pretext for terminating the "Protocolo" other than the sham *Force Majeure* reason offered months earlier, this time alleging ARCHITECTURAL violated Article 36.2 for accepting Addendum Nos. 1, 2, and 3 – the very work orders which INDRHI had initiated and engaged ARCHITECTURAL to perform.

## MOTIVE FOR THE PRETEXT

47.     The real reason for INDRHI's evasive, unsupported, and irrational behavior in attempting to terminate the various contracts with ARCHITECTURAL became clear in December of 2011 though several press releases issued by INDRHI, informing the public that it had executed an agreement on November 14, 2011, on behalf of the Dominican State with Constructora Queiroz Galvao, S.A., the very same Brazilian company with which Plaintiffs had discussions about providing assistance, to continue and complete the works of Azua II. That contract was worth ***USD $98,384,923.23***.

48.     In the weeks and months that followed, ARCHITECTURAL was able to discover that:

   a.     The project assigned to the Brazilian company was the exact same one that had been assigned to ARCHITECTURAL under the "Protocolo;"

   b.     The new contract was worth ***USD $98,384,923.23***;

   c.     On June 7, 2011, after years of delaying Azua II, INDRHI declared it an urgent project which had to be developed immediately;

   d. On June 11, 2011, just three days after the INDRHI declaration, President Leonel Fernandez Reyna, by way of Executive Order Number 110-11 authorized INDRHI to contract with the Brazilian company;

   e. The Brazilian company was awarded the contract without the required bid process;

   f. The Dominican Republic paid the Brazilian company a down payment of **USD $20,000,000.00** to start operations;

49. By hiring a new company to complete the Project and breaching the "Protocolo," the Dominican Republic rendered the agreement with ARCHITECTURAL to construct Azua II impossible to execute and caused ARCHITECTURAL significant damages.

50. All conditions precedent to the filing of this action have been performed, waived, or excused by the Defendants' actions.

51. ARCHITECTURAL and SL & RGITC have retained undersigned counsel to represent it in this action and is obligated to pay a reasonable fee for services rendered herein.

## COUNT I—BREACH OF CONTRACT

52. ARCHITECTURAL and SL & RGITC sue INDRHI and the Dominican Republic for breach of contract.

53. ARCHITECTURAL and SL & RGITC reallege, incorporate, and assert by reference the allegations set forth above in Paragraphs 1 through 51.

54. ARCHITECTURAL, SL & RGITC, and INDRHI, on behalf of the Dominican Republic, entered into the Contract, consisting of the "Protocolo," the Purchase Agreement, and Addendum Nos. 1, 2 and 3.

55. Under the Contract, INDRHI had certain obligations to make payment to ARCHITECTURAL and SL & RGITC for work performed on Azua II.

56. Defendants materially breached the Contract by failing and refusing to pay monies due and owing to ARCHITECTURAL and SL & RGITC under the contract and for unjustifiably terminating the contract when only 10% of the initial design budget and construction work contemplated in the Protocol was completed.

57. As a direct and proximate result of Defendants' material breaches of the Contract, ARCHITECTURAL and SL & RGITC have suffered damages.

58. Under the Contract, ARCHITECTURAL and SL & RGITC are entitled to recover all reasonable attorney fees and costs incurred in enforcing the Contract. ARCHITECTURAL and SL & RGITC have retained the firm of Morgan & Morgan, agreeing to pay reasonable fees for its services.

WHEREFORE, Plaintiffs, Architectural Ingenieria Siglo XXI, LLC and SL & RGITC, demand judgment against Defendants, the Dominican Republic and Instituto Nacional de Recursos Hidraulicos, jointly and severally, for direct and consequential damages, including lost profits, plus prejudgment and post-judgment interest, reasonable attorneys' fees per paragraph 23.5.4 of the "Protocolo," costs, and such other and further relief this Court deems just, equitable, and proper.

## COUNT II—UNJUST ENRICHMENT

59. As an alternative to Count I (Breach of Contract), ARCHITECTURAL sues INDRHI and the Dominican Republic for unjust enrichment.

60. ARCHITECTURAL realleges, incorporates, and asserts by reference the allegations set forth above in Paragraphs 1 through 51.

61. Defendants contracted with ARCHITECTURAL to perform certain work on Azua II.

62. ARCHITECTURAL has conferred a benefit on the Defendants by completing work on Azua II.

63. The Defendants had knowledge of the benefit, and they voluntarily accepted and retained the benefit conferred.

64. Further, Defendants approved the invoices for much of the work, and Defendants failed to pay ARCHITECTURAL for its work completed.

65. It would be inequitable for Defendants to retain the benefit of ARCHITECTURAL's work without paying for its fair value.

66. Defendants have been unjustly enriched at the expense of ARCHITECTURAL.

67. Defendants, jointly and severally, owe ARCHITECTURAL for the amount of unpaid work completed by ARCHITECTURAL under the "Protocolo."

68. Under the Contract, ARCHITECTURAL is entitled to recover all reasonable attorney fees and costs incurred in enforcing the "Protocolo." ARCHITECTURAL has retained the firm of Morgan & Morgan, agreeing to pay reasonable fees for its services.

WHEREFORE, Plaintiff, Architectural Ingenieria Siglo XXI, LLC, demands judgment against Defendants, the Dominican Republic and Instituto Nacional de Recursos Hidraulicos, jointly and severally, for compensatory damages, plus prejudgment and post-judgment interest, attorneys' fees per paragraph 23.5.4 of the "Protocolo," costs, and such other and further relief this Court deems just, equitable, and proper.

Dated this 13th day of February, 2013.

Respectfully submitted,

s/ Tucker H. Byrd_____
**Tucker H. Byrd**
Florida Bar No.: 381632
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3406
Email: TByrd@forthepeople.com

s/ Carlos A. Souffront_____
**Carlos A. Souffront**
Florida Bar No.: 47775
**GRAYROBINSON, P.A.**
1221 Brickell Avenue, Suite 1650
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-688
Carlos.Souffront@gray-robinson.com
*Attorneys for Plaintiffs, Architectural Ingenieria Siglo XXI, LLC and Sun Land & RGITC, LLC*