UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20544-CIV-MOORE/MCALILEY

ARCHITECTURAL INGENIERIA
SIGLO XXI, LLC*, et al.*,

      Plaintiffs,

v.

DOMINICAN REPUBLIC*, et al.*,

      Defendants.

_____/

**AMENDED OMNIBUS REPORT AND RECOMMENDATION
ON AMOUNT OF ATTORNEYS' FEES AND COSTS[1]**

The Court has determined that Plaintiff Architectural Ingenieria Siglo XXI, LLC

("AIS"), and Defendants the Instituto Nacional De Recursos Hidraulicos ("INDRHI") and

the Dominican Republic (the "DR"), are each entitled to recover certain categories of

attorneys' fees and costs. (ECF Nos. 248, 251). Specifically, AIS may recover its trial court

fees and costs from INDRHI only; AIS may not, however, recover any appellate fees and

costs. The DR may recover its trial court fees and costs from both Plaintiffs; it too is not

entitled to recover any of its appellate fees and costs. And INDRHI may recover both its

trial court and appellate court fees and costs but only from Plaintiff Sun Land & RGITC

---

[1] The Court recently issued a Report and Recommendation, (ECF No. 283), that erroneously
applied a discount to the fee award to Defendants. Defendants brought this error to the Court's
attention in a Motion for Clarification, (ECF No. 284), in which they correctly state that they
themselves had already applied the discount in their calculation of the fees that asked to recover.
The Court amends its Report and Recommendation here to correct that error, as well as to award
Plaintiffs costs for an item that the Court previously rejected, but which Plaintiffs have since
clarified was incurred in connection with this case, (ECF No. 287).

LLC ("Sun Land"). (*Id.*).[2]

The Court now has before it motions that address the amounts of those fees and costs. That is, INDRHI and the DR filed their Amended Verified Motion for Attorneys' Fees and Non-Taxable Costs, (ECF No. 255), and Amended Bill of Costs (ECF No. 256), and AIS filed its Renewed Verified Motion for Award of Attorneys' Fees and Costs. (ECF No. 257). The Honorable K. Michael Moore referred the motions to me. (ECF No. 258). AIS did not file a bill of costs and did not respond to Defendants' Amended Bill of Costs. The parties otherwise fully briefed the issues and filed supplemental documents and evidence. (ECF Nos. 259, 262–64, 268–70, 274, 277–78, 280, 282).

## I.    Background

This complex commercial dispute arose from agreements to construct a large-scale irrigation infrastructure project in the DR. INDRHI, a governmental agency in the DR, awarded Plaintiffs the contract. Five years after work commenced, INDRHI terminated the contract.

In February 2013, Plaintiffs sued the DR and INDRHI for breach of contract and unjust enrichment. (ECF No. 1). Defendants failed to timely answer the complaint, and the Court entered a default judgment against them of more than $50 million. (ECF Nos. 15–16). Almost three years later, in December 2015, after extensive motion practice and two appeals, the Court vacated the default judgment. (ECF Nos. 63, 82).

In January 2016, Plaintiffs filed a one-count amended complaint for breach of

---

[2] Sun Land is not entitled to recover any fees or costs. (ECF No. 251 at 2).

contract. (ECF No. 88). A year later, the Court held an eight-day bench trial. (ECF Nos. 177–78, 180–81, 188–90). AIS asked for $14,995,649 in damages from both Defendants, (ECF No. 162 at 21), but the Court awarded it $576,842 (plus prejudgment interest) against INDRHI only. (ECF No. 210 at 30).

The parties' contract has a fees-and-costs-shifting provision which states that "the prevailing [party] shall be entitled to recover all costs and reasonable [attorneys'] fees including pre-trial and appellate levels." (ECF Nos. 88-1 at 37, 88-2 at 8). All parties claimed that they had prevailed in some aspect of the litigation and moved the Court for attorneys' fees and costs. (ECF Nos. 215, 219). As noted, the Court decided which parties were entitled to recover certain categories of fees and costs and from whom and then directed the parties to support their claimed fees and costs with legal memoranda and documentation.

Unfortunately, the way AIS's counsel did so substantially frustrated the Court's task of working through the issues. First, Plaintiff's lead counsel, Morgan & Morgan, did not disclose in its motion the terms of its retainer agreement, despite its obligation to do so under the Rules of this Court. S.D. Fla. Local Rule 7.3(a)(4). Instead, without any explanation or justification, Morgan & Morgan filed a copy of the agreement, with substantial redactions, for the first time with its reply. (ECF No. 263-1). This prompted briefing on the subject, via a sur-reply, a motion for leave to file a response to the sur-reply, and a response to the motion for leave to file a response to the sur-reply. (ECF Nos. 268–70). I barred further briefing and ordered Morgan & Morgan to file the unredacted retainer agreement. (ECF Nos. 271–72). When it did, (ECF No. 274), the newly revealed terms

sparked a new round of legal memoranda. (ECF Nos. 278, 279, 280). Morgan & Morgan's unjustified failure to meet its obligation at the outset caused this Court and defense counsel unnecessary work and delay.

Second, Morgan & Morgan did not keep contemporaneous time records. Instead, it provided the Court with "reconstructed" time records for a four-year period. The unreliability of those records is evident. Obvious examples include the several entries where single timekeepers claim to have worked nearly, or more than, 24 hours in one day. For instance, Morgan & Morgan maintains that one of its attorneys worked 32.7 hours in one day. (ECF No. 257-3 at 28). A Morgan & Morgan attorney verified that this is true. (ECF No. 257 at 16). The Court has little confidence in the accuracy of Morgan & Morgan's time records.

Third, Morgan & Morgan includes in its fee application a claim that INDRHI should pay more than $200,000 in fees for its co-counsel, Gray Robinson, P.A., without providing the Court with any argument regarding the reasonableness of those fees or the Gray Robinson attorneys' rates. Because of that omission, the Court had to sort through the legitimacy of this claim on its own.

Fourth, Morgan & Morgan's request for more than $400,000 of nontaxable costs was wholly deficient. Local Rule 7.3(a)(6) requires that motions for nontaxable costs "describe and document with invoices all incurred and claimed . . . expenses not taxable under 28 U.S.C. § 1920." S.D. Fla. L.R. 7.3(a)(6). Morgan & Morgan did not file a single invoice. Instead, it filed a one-page table that listed 25 vague ("Internet Expense," "Professional Service," etc.) and overlapping ("Travel" and "Travel Expenses," "Expert

Fees" and "AIS Expert Fees," etc.) cost categories with total dollar amounts. Period. (ECF No. 257 at 16, 257-2).

Generously, I think, I gave Morgan & Morgan a second chance and ordered it to file invoices for all requested costs, along with a summary that specifically outlines the cost categories that cross-referenced the invoices. (ECF No. 273). The point of the summary was to clarify AIS's broad, confusing categories and to help the Court navigate the invoices. In response, Morgan & Morgan filed an itemized printout of virtually all those categories, but which is missing more than $100,000 in claimed costs. (ECF No. 277). Morgan & Morgan also failed to include invoices for many of the claimed expenses.

The lack of care Morgan & Morgan afforded to its filings is apparent in other ways. For instance, the total costs claimed in its motion—$438,203.21, (ECF No. 257 at 4, 16)— does not match the amount in the cost summary—$432,513.72, (ECF No. 257-2)—which itself does not match, in several categories, the later-filed itemized summary, (ECF No 277-1). Also, the itemized summary shows that Morgan & Morgan included appellate costs, (ECF Nos. 277-2, 277-5 at 3), which its client is not entitled to recover.

In sum, the manner in which Morgan & Morgan communicated with the Court about its claimed fees and costs conveyed a disregard for the time of the Court and opposing counsel, and seriously undermined the Court's confidence in the accuracy of its claim.

By contrast, Defendants' counsel, Holland & Knight ("H&K"), submitted contemporaneous time records and helpful summaries of its taxable and nontaxable costs, which it supported with invoices and explanation. H&K did, however, include legal arguments that, in my view, clearly lacked merit and unnecessarily added to the Court's

workload. It also neglected to file a resume for one of its timekeepers and did not specify how many hours each individual timekeeper billed, prompting another Court order for supplemental briefing. (ECF No. 281).

After a frustrating but careful review, my recommendations are as follows:

Regarding AIS, the Court should: (1) not award Gray Robinson's attorneys' fees, (2) award Morgan & Morgan's attorneys' fees with a 75% reduction, (3) deny the request for a contingency-fee multiplier, (4) grant in part the request for nontaxable costs, and (5) deny without prejudice the request for prejudgment interest.

As for Defendants, I recommend that the Court: (1) grant in part H&K's attorneys' fees, with a reduction of certain hourly rates in addition to Defendants' proposed reductions and apportionment, and (2) fully grant the requested nontaxable and taxable costs.

## II.      Analysis

### A.      *AIS's Attorneys' Fees*

AIS asks for a fee award against INDHRI of $2,756,131.80, which represents $1,102,452.72 in fees calculated using the lodestar method, enhanced by a 2.5 contingency-fee multiplier. (ECF No. 257 at 4). The claimed hours are for 12 timekeepers: 9 attorneys and 1 paralegal from Morgan & Morgan and 2 attorneys from Gray Robinson. (ECF No. 257 at 5–6). Morgan & Morgan's timekeepers billed 2,234.75 hours, for $992,858.75 in fees. (ECF No. 257 at 6). Gray Robinson's timekeepers billed 624.4 hours, for $237,436.50 in fees. (*Id.*). AIS subtracts from those amounts $127,842.50 in non-compensable appellate fees (without identifying the individual hours or time entries that account for those fees), which leaves a claimed total of $1,102,452.72 in fees. (*Id.*).

1.     *Gray Robinson's Attorneys' Fees.*

The Florida Supreme Court has established that, when fees are to be awarded under a contractual fee-shifting provision, "defendant[s] [cannot] be required to pay the plaintiffs more in prevailing party attorneys' fees than the plaintiffs would owe their attorney under their contingency fee contract." *First Baptist Church of Cape Coral, Florida, Inc. v. Compass Const., Inc.*, 115 So. 3d 978, 981 (Fla. 2013) (citing *Miami Children's Hosp. v. Tamayo*, 529 So. 2d 667, 667–68 (Fla. 1988)). The Court has applied this rule where the prevailing plaintiff's attorneys' fee agreements have "alternative fee recovery clauses," which "generally provide[] for an attorney's fee of the greater of either (i) a specified fee if the fee is paid by the client, or (ii) a court-awarded reasonable fee if the fee is paid by a third-party pursuant to a fee-shifting provision." *Id.* at 981. Morgan & Morgan's retainer agreement has such a clause. It states that the "Firm" is to be compensated by the higher of either a 40% contingency fee or an award of attorneys' fees:

> Our fee for the representation will be ***Forty Percent*** (***40%***) of the "gross value" of any "recovery" realized. "Gross Value" means the total monetary value, whether in cash, property, or other things of value, including the reduction of any claim against you, resulting from any settlement, award, or judgment obtained in this case. You may be entitled to recover attorneys' fees from another party. In the event the court awards attorneys' fees to you, this amount will be included in the "gross value" used in calculating the Firm's fees. We will be entitled to receive whichever is greater of the percentage of gross value agreed to herein, or the court awarded attorneys' fees.

(ECF No. 274-1 at 2).

Significantly, the agreement defines the "Firm" as Morgan & Morgan, P.A., and states that it "has been retained to represent [Plaintiffs] (hereinafter 'you') in connection with the above-referenced matter." (*Id.* at 1). The agreement does not say that Plaintiffs

7

also hired Gray Robinson. So, unsurprisingly, the agreement is signed only by representatives of Plaintiffs and Morgan & Morgan. (ECF No. 274-1 at 4).

The agreement identifies Gray Robinson as an "Associating Attorney" and states that "[t]he Firm [*i.e.,* Morgan & Morgan] shall be responsible to pay attorneys' fees to any associated attorney from the final disbursement proceeds to the Firm." (*Id.* at 3).[3] The agreement says that "[t]he Forty Percent (40%) fee" will be split between Morgan & Morgan (22%), Gray Robinson (12%), and Julio Morales (6%). (*Id.* at 3).

Plainly, the retainer agreement is between AIS and Morgan & Morgan. Gray Robinson is not a party to the agreement. The plain language obligates Plaintiffs to pay Morgan & Morgan a 40% contingency fee, or, alternatively, Morgan & Morgan may be compensated with higher court-awarded attorneys' fees. There is no provision that likewise says that Plaintiffs are responsible to pay Gray Robinson a contingency fee, or, alternatively, that Gray Robinson may be compensated with higher court-awarded attorneys' fees. Instead, Morgan & Morgan assumed the responsibility to pay Gray Robinson from its final disbursement of proceeds.

I conclude that the retainer agreement does not obligate AIS to pay Gray Robinson's attorneys' fees. That being so, the Court cannot order INDRHI to pay AIS Gray Robinson's reported attorneys' fees and costs.

Even had the contract defined the "Firm" to include Gray Robinson and expressly obligated Plaintiffs to pay fees to Gray Robinson, Gray Robinson still would not be able to

---

[3] The agreement also identifies Julio Morales as an Associating Attorney. (ECF No. 274-1 at 3).

enforce that agreement, because it did not sign it. *Chandris, S.A. v. Yanakakis*, 668 So. 2d 180, 186 (Fla. 1995). Rule 4-1.5(f)(2) of the Rules Regulating the Florida Bar, which governs contingent fee agreements, provides that "[e]ach participating lawyer or law firm must sign the [contingency-fee] contract with the client and must agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved." In *Chandris*, the Florida Supreme Court determined "that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable." 668 So. 2d at 185–86. "Thus, a contract that fails to adhere to these requirements is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule." *Id.* at 186. Consequently, "*Chandris* . . . leaves no doubt that a lawyer's failure to comply with Rule 4-1.5(f)(2) precludes the lawyer from enforcing a contingent fee agreement, including a participation agreement, because such a failure violates public policy. . . ." *Katz v. Frank, Weinberg & Black, P.L.*, 268 So. 3d 773, 777 (Fla. 4th DCA 2019). An attorney's only recourse in this situation would be to recover "the reasonable value of his or her services on the basis of quantum meruit." *Chandris,* 668 So. 2d at 186 n.4; *accord Lackey v. Bridgestone/Firestone, Inc.*, 855 So. 2d 1186, 1188 (Fla. 3d DCA 2003) (holding that two attorneys who did not sign contingency-fee agreement could not recover under the contract, but, after an evidentiary hearing, might recover on a quantum meruit basis).

Gray Robinson did not sign the retainer agreement; its only recourse to recover any fees would be in quantum meruit. Gray Robinson, however, made no such argument and

has therefore waived any claim it might make to this Court to seek fees on that basis. In any event, the Court cannot determine on this record what, if any, amount of fees Gray Robinson might be able to recover under that theory. To do so, the Court "must consider the amount of time the attorneys devoted to the representation and a reasonable hourly rate as factors in computing an award, as well as the totality of the circumstances surrounding the client/lawyer relationship in awarding fees." *Lackey*, 855 So. 2d. at 1189 (citing *Searcy, Denney, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (Fla. 1995)). Plaintiffs, however, presented no argument regarding the reasonableness of Gray Robinson's fees. And Gray Robinson remained completely silent during this fees-and-costs dispute— Morgan & Morgan handled all the briefing, and the motions and expert affidavit essentially ignore Gray Robinson. Plaintiffs did say in their original fee motion that an affidavit for Gray Robinson "will be forthcoming," (ECF No. 219 at 4 n.5), but none was filed.[4]

The Court knows very little about the relationship between Plaintiffs and Gray Robinson, beyond the contract's identification of that firm as an Associating Attorney. The Court is in no position to evaluate the "totality of the circumstances" surrounding Gray Robinson's relationship with AIS. *Lackey*, 855 So. 2d. at 1189 (reversing fee award so that trial court might hold an evidentiary hearing to take testimony regarding the factors that support an award in quantum meruit).

---

[4] AIS says in its reply that "[t]he Court is the ultimate arbitrator of whether a fee is reasonable, and no additional expert affidavit is needed to award the relatively modest amount of Gray Robinson fees." (ECF No. 263 at 8). While true that the Court sets the reasonable fee, that does not excuse the party's burden to prove up those fees, which may be supported with affidavits. I also do not consider $237,436.50 to be a relatively modest amount.

For these reasons, I recommend that the Court deny any award of Gray Robinson's fees.[5]

2.      *Morgan & Morgan's Attorneys' Fees.*

Having concluded that Gray Robinson's fees are not recoverable, I would now, ideally, subtract those fees from the $992,858.75 that AIS asks to recover, as well as Morgan & Morgan's portion of the non-compensable appellate fees, and then determine if the resulting amount is reasonable. AIS, however, does not tell us which lawyers billed the appellate fees or what hours account for the appellate fees. It states only that both firms' appellate fees, combined, are $127,842.50. (ECF No. 257 at 6). The Court expressly ruled that AIS could not recover any appellate fees, and it is frustrating, to say the least, that its counsel failed to segregate the appellate fees in a precise manner, in its fee application.

Rather than ask AIS to file yet another document and further prolong this matter, I fashion significant across-the-board reductions of Morgan & Morgan's claimed attorneys' fees (based on other reasons, outlined below) that I am confident eliminate any possibility that AIS's fee award includes appellate attorneys' fees. I therefore begin this analysis with the $992,858.75 figure.

The Florida Supreme Court, in *Fla. Patient's Comp. Fund v. Rowe,* 472 So. 2d 1145, 1150 (Fla. 1985), adopted the federal lodestar approach for determining reasonable attorneys' fees. "A lodestar is calculated by multiplying the number of hours reasonably spent times a reasonable hourly rate." *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996

---

[5] Based on this ruling, the Court need not address Defendants' other arguments as to why the retainer agreement is void.

F.2d 1144, 1147 (11th Cir. 1993). The *Rowe* Court set forth eight factors for Courts to consider when determining reasonable fees:

> (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved, and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

*Rowe*, 472 So. 2d at 1150.[6]

*Rowe* directed courts to begin the process by determining the number of attorney hours reasonably expended. *Id.* In doing so, the court may consider the factors that address the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," and "whether the fee is fixed or contingent." *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1126 (Fla. 2017) (citing *Rowe*, 472 So. 2d at 1150–51).[7] Of importance here, *Rowe* "emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the

---

[6] That criteria are now listed in Florida Rule of Professional Conduct 4–1.5.

[7] These are factors one, four and eight.

client may pay the fee." *Rowe*, 472 So. 2d at 1150. Where reasonable hours are determined in this fashion, the court may then look to the remaining factors to calculate a reasonable hourly rate. *Joyce*, 228 So. 3d at 1126. Once the court determines the lodestar, it may add or subtract from the fee based on a "contingency risk" factor and the "results obtained." *Rowe*, 472 So. 2d at 1151.

### i.      Hourly rates

Morgan & Morgan's hourly rates range from $670 to $500 an hour for partners, $575 to $300 an hour for "lawyers" of unspecified positions, $375 an hour for an associate, and $225 an hour for a paralegal. (ECF No. 257-5 at 5–6). Defendants do not object to these rates; in fact, they seek fees based on similar rates. (ECF No. 259-1 at 2 ¶ 4).

Later, when I turn to Defendants' fee petition, I recommend a reduction of H&K's hourly rates, and if I were performing a detailed lodestar analysis here, I would recommend a corresponding reduction of Morgan & Morgan's hourly rates. For reasons I explain below, I recommend a percentage reduction of Morgan & Morgan's claimed fees. The reduction I propose accounts for hourly-rate reductions that I might otherwise recommend.

### ii.      Hours billed

Here, it seems there is no dispute that factors one and seven support a fee award, as Defendants agree that "[t]his was a particularly hard-fought case" with "complex and challenging legal issues" and "painstakingly complex" factual issues, requiring "high caliber legal representation and a well-staffed legal team." (ECF No. 255 at 4). As for factor four, although "the amount involved" is not in dispute, "the results obtained" is highly disputed, and is addressed below.

13

Morgan & Morgan claims it billed 2,234.75 hours (some unknown portion of which was for disallowed appellate fees). (ECF No. 257 at 6). Unfortunately, Morgan & Morgan did not keep "current records of work done and time spent" on this case. *Rowe*, 472 So. 2d at 1150. Instead, years after-the-fact, Morgan & Morgan had its attorneys create "reconstructed" billing records from April 2012[8] to September 2017—a span of more than five years. (*See* ECF Nos. 257-3, 263 at 8). Although a prevailing party may submit reconstructed time records, in a multi-year litigation, where attorneys estimate the time they devoted to countless tasks years earlier, they cannot expect the Court to simply accept those estimates as reasonable. *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 878 n.10 (11th Cir. 1990) ("a court has discretion to determine the credibility of hours claimed in the absence of contemporaneous records").

Defendants highlight the unreliability of these records by pointing out time entries that claim an attorney worked more than 24 hours in one day: "on October 29, 2014, four different lawyers billed 29.5 hours, 30 hours, 32.7 hours and 38.5 hours in a single day which is, of course, impossible." (ECF No. 259 at 17). Other attorneys have time entries that claim nearly 24 hours in a day, which is highly improbable. For example: "Aaron Garnett billed 20 hours on June 2, 2017, and Arletys Rodriquez billed 20.45 hours on September 20, 2016, 17.7 hours on September 22, 2016, 17.45 hours on December 1, 2016, and 18.50 hours on June 2, 2017." (*Id.*).

---

[8] Plaintiffs filed this case in February 2013, but some of the time is for reviewing the case and preparing to file suit.

AIS says nothing in its reply about those particular time entries. AIS also claims that its reconstructed billing records underestimate their hours, because they "do not capture countless additional hours spent developing case strategy, communicating with team members, and other[] litigation tasks." (ECF No. 257 at 7). Again, prevailing parties are responsible for submitting reliable time records. It is unreasonable to reconstruct time records years later, with obvious errors, and then ask the Court to trust that those records in fact underestimate the hours reasonably expended.

Defendants propose that the Court account for this poor documentation with a 10% reduction. (ECF No. 259 at 17). I find this reasonable. *See e.g., In re Davis*, No. 87-50208, 1989 WL 1718763, at *19 (Bankr. S.D. Ga. Sept. 8, 1989) (reducing claimed hours by 10% for failure to maintain contemporaneous records).

Considerable block billing also hampered a determination of the reasonableness of Morgan & Morgan's hours. Block billing occurs when an attorney lists multiple tasks in one-time entry without separately identifying the time spent on each task. Block billing pervades Morgan & Morgan's time records, which is no surprise for records created well after-the-fact. For example, many entries simply list a motion, or something like "trial preparation," with multiple hours, without any explanation of how that time was spent. This makes it impossible for the Court to conduct an hour-by-hour review of the time records to determine their reasonableness. *See Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (block billing results in "imprecision" in the time records, "for which the opponent should not be penalized") (internal quotations omitted).

I agree with Defendants that a 15% reduction reasonably accounts for the block billing. (ECF No. 259 at 17). *See, e.g., Chavez v. Mercantil Commercebank, N.A.*, No. 10-23244-CIV, 2015 WL 136388, at *4 (S.D. Fla. Jan. 9, 2015) ("Courts confronted with significant block billing take that into account to order across-the-board reductions.").[9]

Defendants also urge, correctly, that AIS's limited victory requires an additional significant reduction of Morgan & Morgan's claimed fees. The Supreme Court recognized that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In fact, the Court called the degree of success obtained "the most critical factor" in determining the reasonableness of a fee award to a prevailing party. *Id.* Courts have significantly reduced fees when plaintiffs recovered a small percentage of their claimed damages. *See Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014) (affirming 75% reduction in fees where recovery was 1.8% of claim); *see also Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*, No. 08-61240-CIV, 2009 WL 2143628, at *2 (S.D. Fla. July 16, 2009) (reducing fees by 50% due to limited success).

Here, AIS sued for about $14.9 million in damages, plus interest, and recovered only $576,842, plus interest. That is, AIS won 3.9% of its claim, exclusive of prejudgment interest. When one adds the $335,483.72 in prejudgment interest that AIS now claims,

---

[9] Defendants also argue that AIS impermissibly seeks fees that are attributable to Sun Land. Again, I am confident that my recommended percentage reduction eliminates the possibility that AIS's fee award includes attorneys' fees incurred for Plaintiff Sun Land.

(ECF No. 257 at 16), the percentage grows a bit, to 4.6%. "Whether the plaintiff's relief is significant depends upon 'the scope of the litigation as a whole.'" *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987) (affirming 67% reduction where recovery was only 1.5% of damages sought) (quoting *Hensley*, 461 U.S. at 440). Viewing the litigation as a whole, AIS achieved very limited success, which I find warrants a 50% reduction of attorneys' fees. *See, e.g.*, *Ramos*, 2009 WL 2143628, at *2.

In sum, I recommend that the Court reduce Morgan & Morgan's $992,858.75 fee by 75%, which comes to $248,214.69.

## B.   *Contingency-Fee Multiplier.*

Under Florida law, once a court has determined a reasonable attorneys' fee, it may consider enhancing that fee with a contingency fee multiplier. *Joyce*, 228 So. 3d at 1128 ("trial judges are not required to use a multiplier; but when they do, evidence must be presented to justify the utilization of a multiplier") (internal quotations omitted). AIS asks the Court to apply a 2.5 contingency-fee multiplier, or alternatively, a multiplier of 2 or 1.5.[10] (ECF No. 257 at 12–15). In tort and contract cases, Florida courts may look to three factors to determine whether a contingency-fee multiplier is necessary:

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

---

[10] Notably, AIS's fee expert, Kevin Reck, opines that a contingency-fee multiplier of 2 is reasonable and makes no mention of the 2.5 multiplier AIS requests. (ECF No. 257-5 at 8).

*Joyce*, 228 So. 3d at 1124 (quoting *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990)).

The only evidence AIS provided in support of a multiplier is the affidavit of its owner, Julio Morales Rus. (ECF No. 257-6). Morales states that Morgan & Morgan is the only law firm he could find to represent AIS on a contingency basis. *Id.* AIS argues that this supports the first factor, that the "relevant market requires a contingency fee multiplier to obtain competent counsel." (ECF No. 257 at 14). AIS's only comment about the second factor is that "as a result of AIS' limited financial resources, AIS' counsel was unable to mitigate the risk of nonpayment." (*Id.*).[11] And regarding the third *Rowe* factor— the amount involved and results obtained—AIS simply says: "AIS was successful in obtaining a verdict of almost $600,000, with hundreds of thousands of dollars in prejudgment interest still to come. The amounts at issue were significant, and so were the results obtained." (ECF No. 257 at 9).

AIS has fallen short of providing "evidence . . . to justify the utilization of a multiplier." *Joyce*, 228 So. 3d at 1128. The Court would expect to see more evidence that the "relevant market requires a contingency fee multiplier" (factor one) besides the singular and conclusory affidavit of AIS's owner. In particular, the Court has no evidence that for attorneys in this legal market, the possibility of a fee multiplier is required to secure counsel with a contingency fee. As for factor two, again, the Court would need more than AIS's

---

[11] In its reply, AIS contends that collection of a judgment from Defendants "is anything but certain." (ECF No. 263 at 5).

conclusory statement to support a fee multiplier. As for the third factor, as already explained, the very modest results that AIS obtained support a reduction of AIS's fee award, not an enhancement of it.[12] Moreover, the amount involved—nearly $15,000,000—offered AIS's counsel the possibility of an enormous fee award. Had the claimed damages been so small that they could not possibly support a contingency fee that could reasonably compensate counsel, then the availability of a fee multiplier could be decisive in attracting counsel. Such was not the case here.

For these reasons, I recommend that the Court not apply a contingency fee multiplier in calculating AIS's reasonable attorneys' fees.

### C.    *AIS's Nontaxable Costs*

"[B]oth the Supreme Court and this Circuit have long recognized that contractual provisions can circumvent [the] restrictions on taxable costs." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017). Here, the contract provides that "the prevailing [party] shall be entitled to recover *all costs* and reasonable [attorneys'] fees. . . ." (ECF Nos. 88-1 at 37, 88-2 at 8) (emphasis added). Thus, the contract "contains broad enough language to cover the award of both taxable and nontaxable costs related to litigation arising out of the contract." *Yellow Pages*, 846 F.3d at 1166.

AIS does not ask to recover taxable costs because "taxable costs were small enough

---

[12] S*ee Encompass Floridian Ins. Co. v. Dunn*, No. 618CV228ORL41DCI, 2019 WL 5398933, at *4 (M.D. Fla. Oct. 1, 2019), *report and recommendation adopted*, 618CV228ORL41DCI, 2019 WL 5391101 (M.D. Fla. Oct. 22, 2019) (denying contingency-risk multiplier based in part on "unsuccessful nature of the overwhelming majority of Defendant's litigation efforts").

that AIS only moved for non-taxable costs. That is why a bill of costs was not filed." (ECF No. 263 at 9). AIS does ask to be awarded $438,203.21 in nontaxable costs. (ECF No. 257 at 4, 16). Unfortunately, AIS has not clarified that these nontaxable costs do not include appellate costs. AIS says only that "[t]he non-taxable costs incurred in this case include travel, document translations, electronic document management, expert fees, PACER,[13] legal research database and others." (ECF No. 257 at 15–16).

Local Rule 7.3(a)(6) requires motions for nontaxable costs to "describe and document with invoices all incurred and claimed . . . expenses not taxable under 28 U.S.C. § 1920. . . ." S.D. Fla. L.R. 7.3(a)(6). "Consequently, the matter is quite settled in this district that a moving party must provide supporting documentation to justify a cost award of any kind." *Lustig v. Bear Stearns Residential Mortg. Corp.*, No. 08-14419-CIV, 2010 WL 11519359, at *2 (S.D. Fla. June 3, 2010); *Gonzalez v. Wells Fargo Bank, N.A.*, No. 1:13-CV-23281, 2015 WL 12978820, at *8 (S.D. Fla. Mar. 20, 2015), *report and recommendation adopted*, 2015 WL 12978799 (S.D. Fla. Apr. 8, 2015) (reduced claimed nontaxable costs for messenger service and telephone charges where movant did not comply with the local rule).

AIS attached to the motion a one-page "Cost Summary Report," (ECF No. 257-2 at 2), that it says is "counsel's business records that summarize the costs actually incurred." (ECF No. 263 at 9). Although the motion says that those costs are $438,203.21, (ECF No. 257 at 4, 16), the Cost Summary Report has a different total: $432,513.72. (ECF

---

[13] I, however, found no category, line item, or documentation for "PACER." To the extent PACER charges are hidden within categories of a different name, I cannot determine that from the record.

No. 257-2 at 2). The Cost Summary Report is spartan; it simply lists 25 broad (and at times confusing) categories with total dollar amounts. (*Id.*).

Those categories, and their dollar amounts, are as follows: "Color Copies" ($29.50); "Color Printing" ($11,866); "Copies" ($2,301); "Courier" ($88.32); "Court Reporter" ($3,712.32); "Court Fees" ($30); "Deposition" ($18,798.48); "Fed Ex" ($204.12); "Investigative Fees" ($1.40); "Long Distance Telephone" ($68.50); "Meals" ($58.44); "Internet Expense" ($46); "Professional Service" ($115,432.28); "Postage" ($53.53); "Black & White Printing" ($9,091); "Process Service" ($503.59); "Records" ($101); "Trial Equipment" ($870.54); "Travel" ($2,743.12); "Travel Expenses" ($15,089.68); "Westlaw" ($573.68); "Witness fee" ($103); "Expert Fees" ($132,298.22); "AIS Expert Fees" ($50,000); and "Outstanding Expert Fees" ($68,450). (*Id.*). AIS provided no documents to evidence these costs, as Local Rule 7.3(a)(6) requires.

I ordered AIS to file "[t]he invoices for all requested costs" and "[a] summary that outlines, with specificity, the categories of costs, with specific reference to the invoice(s) by page number(s) that support those claimed costs." (ECF No. 273 at 2). The purpose of the summary was to clarify the confusing and broad cost categories and to guide me as I reviewed the invoices, so that I was clear that the claimed costs are recoverable and properly documented. AIS did not fully follow this instruction. In lieu of a simplified summary, Morgan & Morgan generated from its computer system a "Cost Summary Report with Detail (the 'Cost Detail Report')," (ECF No. 277 at 1), which is essentially an itemized version of the original summary. Again, Morgan & Morgan made little effort to assist the Court.

There are also five unexplained increases and omissions in the Cost Detail Report: (1) the cost of "Color Printing" is increased from $11,866 to $11,929; (2) the cost for "Long Distance Telephone" is increased from $68.50 to $71.75; (3) the cost of "Black & White Printing" is increased from $9,091 to $9,124.25; (3) the "AIS Expert Fees" of $50,000 is omitted; and (4) the "Outstanding Expert Fees" of $68,450 does not appear on that report. (*Compare* ECF Nos. 257-2 *and* 277-1 at 17, 22, 47, 49).

When it filed the Cost Detail Report, AIS wrote this:

> Only the cost payments advanced by Morgan & Morgan appear on the Cost Detail Report. Costs incurred directly by AIS do not. Thus, the total costs incurred, $432,513, is set forth on the Cost Summary Report. The Cost Detail Report only lists $314,063 in costs, as $118,450 in costs did not flow through Morgan & Morgan.

(ECF No. 277 at 2 n.1). So, AIS acknowledges that for $118,450 of costs that it asks to recover, it did not provide invoices to prove up those costs.

Also, AIS provided supporting documents for just eight of the cost categories: "Court Fees," "Court Reporter," "Deposition," "Professional Service," "Process Service," "Records," "Trial Equipment," and "Expert Fees." (*Id.* at 1–2).

For "Court Fees" ($30), AIS filed a letter to the Clerk of Court for the Eleventh Circuit requesting a CD recording of the March 25, 2015 oral argument in the appeals from this case, along with a $30 check. (ECF No. 277-2). This is a nonrecoverable cost.

For "Court Reporter" ($3,712.32), AIS filed invoices and checks totaling $3,712.32 for trial transcripts. (ECF No. 277-3).

For "Deposition" ($18,798.48), AIS similarly filed invoices, checks, and a receipt for court reporters and translation services. (ECF No. 277-4). The invoices add to

$18,798.48. (*Id.*).

For "Professional Service" ($115,432.28), AIS filed invoices and checks for different types of outside vendors. (ECF No. 277-5). The attached documents support a different total: $114,482.28. (*Id.*). The $950 difference is for two undocumented amounts that are listed on the Cost Detail Report: $350 to "TUCKER H. BYRD" with a comment that says, "S.D OF FLORIDA," and $600 to payee "Winderweedle, Haines, Ward & Woodm" (the name cuts off after the "m"), that has no explanation. (ECF No. 277-1 at 22). This category of the Cost Detail Report includes an invoice for another plainly unrecoverable amount: $2,688.79 paid to AppealTech for the preparation and filing of appellate briefs, (ECF No. 277-5 at 3).

For "Process Service" ($503.59), AIS filed invoices and checks to Attorneys Legal Services, Inc. that total $503.59. (ECF No. 277-6).

For "Records" ($101), AIS filed a copy of a $100 check to the United States Treasury. (ECF No. 277-7 at 2). There are no documents for two entries on the Cost Detail Report, for $0.80 and $0.20, respectively, to "Benjamin A. Webster." (ECF No. 277-1 at 47).

For "Trial Equipment" ($870.54), AIS filed a $779.64 check to a court reporter for a trial transcript,[14] as well as an email from the court reporter. (ECF No. 277-8). No support was provided for the remaining $16.01 payed to "Sandra Heath" nor the $74.89 paid to "Christian Savio." (ECF No. 277-1 at 47).

---

[14] A transcript is not "Trial Equipment"—laptops, projectors, and the like are examples of what I would expect to be included within such a category.

For "Expert Fees" ($132,298.22), AIS filed, among several invoices, three checks to the Berkeley Research Group totaling $132,298.22. (ECF No. 277-9).

I recommend that the Court award AIS $302,042.36 in nontaxable costs, and I have arrived at that number in several steps.

First, I presume that AIS in fact seeks $432,513.72 in fees, as set forth in the original Cost Summary Report. (ECF No. 257-2).

Second, I deduct the $118,450 in costs that AIS omitted from the Cost Detail Report. (ECF No. 277 at 2 n.1). That these "costs did not flow through Morgan & Morgan," (ECF No. 277 at 2 n.1), does not justify not documenting those costs and not following the Court's order to do so in an easy-to-follow summary, (ECF No. 273). AIS has thus waived its claim to these costs.

Third, I deduct $2,718.79 in appellate costs, which AIS is not entitled to recover from INDRHI. (ECF No. 251 at 2). Two cost items make up that amount: (1) $30 paid the Eleventh Circuit for the recording of an oral argument, (ECF No. 277-2), and (2) $2,688.79 to AppealTech for the preparation and filing of appellate briefs. (ECF No. 277-5 at 3). These are obvious appellate costs.

Fourth, I deduct $950 from the "Professional Service" category due to lack of proof. Morgan & Morgan's mishmash of invoices and checks from different types of outside vendors (which was confusing as is) shows costs of $114,482.28, not the $115,432.28 alleged. Missing are invoices and an explanation for the $350 paid to "TUCKER H. BYRD" and the $600 paid to "Winderweedle, Haines, Ward & Woodm." (ECF No. 277-1 at 22). Being unexplained and unsupported, these amounts are not awardable.

Fifth, I deduct $90.90 from the $870.54 allegedly spent for "Trial Equipment." There is no evidence of, or explanation for, the $16.01 paid to "Sandra Heath." or the $74.89 paid to "Christian Savio." (ECF No. 277-1 at 47).

Sixth, I deduct $1 from the $101 under the "Records" category because there is no support or explanation for the $0.80 and $0.20 payments to Benjamin A. Webster. (ECF No. 277-1 at 47).

Seventh, I do not deduct the costs for "Color Copies" ($29.50), "Color Printing" ($11,866), "Copies" ($2,301), and "Black & White Printing" ($9,091), which total $23,287.50, for failure to include invoices. Unless outside vendors are contracted, these costs are normally evidenced by internal record-keeping software, as shown by H&K's own documents in support of its bill of costs. (ECF No. 256-1 at 74–81). But two problems remain with these costs: (1) unexplained disparities between the Cost Summary Report and Cost Detail Report raise doubts as to the accuracy of Morgan & Morgan's recordkeeping, and (2) the requested amounts likely include costs incurred for the appeals, which AIS may not recover.

Regarding the disparity between the two reports, the increase in printing costs from the Cost Summary Report to Cost Detail Report is inexplicable. For example, for "Color Printing," the Cost Detail Report adds $63 in costs. The last printing date is "11/02/2018," (ECF No. 277-1 at 17), which is well before AIS filed its motion for fees and costs, (ECF No. 257). So, the answer is not that Morgan & Morgan printed more paper in the last few months. The same is true for "Black & White Printing," where the Cost Detail Report includes an extra $33.25; the last printing date is "09/16/2019," the same day AIS filed its

motion for fees and costs, (ECF No. 257), and it is for only $4.50. (ECF No. 277-1 at 47). In a different category, "Long Distance Telephone," the Cost Detail Report adds $3.25 to that category. The last telephone charge was on "9/17/2019" for 50 cents, and the second to last was on "05/03/2018," also for 50 cents. (ECF No. 277-1 at 22). Again, the extra dollars cannot be explained by additional calls being made between when AIS filed its motion (September 2019) and its supplemental documents (December 2019).

Regarding the problem of AIS seeking appellate costs, Morgan & Morgan has already included two cost items that are, on their face, related to the appeals. These easy-to-catch-yet-missed errors suggest that Morgan & Morgan indiscriminately generated and submitted a report of all costs without first checking for accuracy. And even if it did check, it would be impossible for the firm to determine what line item involved, say, copying an appellate brief versus a trial-court motion.

For guidance, I looked to H&K's bill of costs. (ECF No. 256). In it, H&K says that it incurred "$12,580 for copying and printing costs" but that "$1,612 is attributable to the appeal," (ECF No. 256-1 at 6), which is around 12%. This may be a good yardstick for presuming the percentage of Morgan & Morgan's appellate copying and printing costs. But comparing both costs raises another concern: H&K spent $12,580 in copying and printing in this case, while Morgan & Morgan claims to have spent almost twice as much: $23,287.50. That difference instills more doubt about Morgan & Morgan's number, a concern made worse by the errors already discussed.

To address both problems, I recommend a 25% reduction ($5,821.88) in the costs for "Color Copies," "Color Printing," "Copies," and "Black & White Printing." *See Banta*

26

*Properties, Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2014 WL 11517849, at *1 (S.D. Fla. Sept. 2, 2014). (applying 25% across-the-board reduction to claimed copying costs to exclude "copies that may have been unreasonable or unnecessary, that may have been for the convenience of counsel, or that otherwise may have fallen outside the realm of permissible copies"). The reduction would result in $17,465.62 in awardable costs for those categories.

Eighth, I reduce the categories of "Travel" ($2,743.12) and "Travel Expenses" ($15,089.68)—which I will treat as one category totaling $17,832.80, because they both mean the same thing—in a similar manner given the same appellate-cost problem. In its motion, H&K says that it incurred $52,923 in travel costs and proposes a 10% reduction to eliminate any time spent on non-compensable matters. (ECF No. 255 at 19). Although AIS seeks less in travel costs than H&K, these costs likely include appellate costs. Therefore, I also recommend a 10% reduction ($1,783.28) of AIS's travel costs, which results in $16,049.52.

Ninth, I accept the "Westlaw" charge of $573.68. H&K asks to recover $58,044 in Westlaw costs, (ECF No. 255 at 20), which AIS does not oppose. I do not doubt that Morgan & Morgan incurred these claimed charges.

Tenth, as for the $103 for "Witness Fee," this consists of $50 to "Jed Moss" and $53 to "Cynthia Flores." (ECF No. 277-1 at 48). Morgan & Morgan does not explain who these people are. Based on H&K's bill of cost, I have deduced that Flores was a "former employee of SunTrust Bank who worked on the financing proposal to the Dominican Republic for the Azua II project." (ECF No. 256-1 at 14). But "Jed Moss" remains a

mystery—his name does not appear in the parties' witness lists or in the submissions related to fees and costs. Therefore, I recommend that the Court eliminate the $50 payment to "Jed Moss" but award the $53 payment to Cynthia Flores.

Eleventh, I recommend not awarding those remaining costs for which there is no support or explanation: "Courier" ($88.32), "Fed Ex" ($204.12), "Investigative Fees" ($1.40), "Long Distance Telephone" ($68.50), "Meals" ($58.44), "Internet Expense" ($46), and "Postage" ($53.53), totaling $520.31. AIS has provided no support for these costs, despite Court order, and I can find no equivalent for them in H&K's submissions. That is not to say that AIS did not actually incur these costs. But AIS had the burden of sufficiently explaining and evidencing its costs, and it did not do so here.

In sum, I recommend that the Court award AIS $302,127.56 in nontaxable costs. I arrived at that number in this fashion: $432,513.72 (original amount) minus $118,450 (amount not included in Cost Detail Report) minus $2,718.79 (appellate costs) minus $950 (unsupported and unexplained "Professional Service") minus $90.90 (unsupported and unexplained "Trial Equipment") minus $1 (unsupported and unexplained "Records") minus $5,821.88 (25% reduction in copying and printing) minus $1,783.28 (10% reduction in travel) minus $50 (unsupported and unexplained "Witness Fee") minus $520.31 (other unsupported and unexplained costs) equals $302,127.56 in awardable costs. [15]

---

[15] In their opposition response, Defendants argue that AIS impermissibly comingled taxable and nontaxable costs, in violation of Local Rule 7.3, and that AIS claimed costs attributable to Sun Land. (ECF No. 259 at 19). I consider it unnecessary to address these arguments given the reductions I recommend. I do note, however, that AIS's claim that it "only moved for non-taxable costs," (ECF No. 263 at 9), is inaccurate. Some of AIS's requested costs are obviously taxable, such as for transcripts, copies, and interpreters. Moreover, Local Rule 7.3(a) unambiguously says that "costs and expenses sought in a motion [for nontaxable costs] shall not include any cost sought

### D.    *AIS's Requested Prejudgment Interest*

AIS asks for $335,483.72 in prejudgment interest. (ECF No. 257 at 16). Defendants do not address the merits of AIS's request for prejudgment interest. Instead, they say that because the Court directed the parties to file motions for attorneys' fees and costs only, calculating prejudgment interest now "is neither relevant nor appropriate for consideration by this Court at this time. . . ." (ECF No. 259 at 2 n.1).

"In Florida, prejudgment interest is an element of compensatory damages and, 'when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss.'" *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991) (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)). Therefore, "[t]o receive an award of prejudgment interest as damages, a plaintiff must show only two things: '(1) [o]ut-of-pocket pecuniary loss, and (2) a fixed date of loss.'" *Chavez v. Mercantil Commercebank, N.A.*, 601 F. App'x 814, 816 (11th Cir. 2015) (quoting *Underhill Fancy Veal, Inc. v. Padot*, 677 So. 2d 1378, 1380 (Fla. Dist. Ct. App. 1996)).

AIS identifies neither the amount nor the date of loss. (ECF No. 257 at 16). It provides a table that calculates prejudgment interest starting from February 13, 2009, (ECF No. 257-4), which is when the Court found "INDRHI breached the Contract. . . ." (ECF No. 210 at 23). It is not self-evident, however, that this is the fixed date of loss, and AIS

---

in a bill of costs." S.D. Fla. L.R. 7.3(a). Once again, Morgan & Morgan failed to follow this Court's rules. But rather than recommend the complete denial of the comingled taxable costs, I addressed them on the merits.

did not say that it was.

The amount and date of loss may be a simple matter of no dispute, but the Court will not assume this. I therefore recommend that the Court deny AIS's request for prejudgment interest without prejudice.[16]

### E.   *Defendants' Attorneys' Fees*

Defendants submit that over the course of this litigation they incurred $5,704,002 in attorneys' fees for 12,346.60 hours of billable work: $4,918,124 incurred at the trial level and $785,878 at the appellate level. (ECF No. 255 at 4–5). Of this amount, Defendants ask to recover $3,643,690 in fees for 9,277 hours of work. (ECF Nos. 255 at 16–18). First, this reduction reflects $1,302,410 in fees and costs the Court ruled they are not entitled to. (ECF No. 255 at 5).[17]

Second, of the 36 timekeepers who worked on the case, Defendants seek fees for a "core group" of 10: two litigation partners, one appellate partner, three associates (one of whom replaced a departing associate), three paralegals, and one eDiscovery manager. (ECF Nos. 255 at 9, 255-3 at 19). Their hourly rates range from $235 to $670 an hour. (ECF Nos. 255 at 13, 255-5). Also, H&K discounted the partners' rates by 10% to 15% and the appellate partner's rate by 10%. (ECF No. 255 at 13). Defendants say that no more than "six to seven" timekeepers billed at any one time. (*Id.* at 9). The other 26 timekeepers,

---

[16] The parties must meet and confer, as the subject of prejudgment interest should be something they can resolve by agreement.

[17] Specifically, this amount was for the DR's appellate fees and costs and INDRHI's trial and appellate fees and costs against AIS. (*Id.*).

according to Defendants, performed limited tasks and billed, on average, no more than 11 hours each, totaling just 296.5 hours in four years. (*Id.* at 10).

Third, Defendants propose a 15% across-the-board reduction to address block-billing. (*Id.* at 11). Defendants admit that their bills contain some block billing and that long-term litigation increases the chance of duplicative and unnecessary work. (*Id.* at 10–11). But they submit that block billing was not "pervasive" and was ameliorated by the detailed work descriptions in the billing record. (*Id.* at 11).

Defendants support their fees with contemporaneously recorded time records of the trial-court and appellate litigation. (ECF Nos. 255-1, 255-2). They also provide the expert affidavit of Gerald B. Wald, a Florida attorney of 49 years. (ECF No. 255-3). Wald opines that H&K appropriately staffed the case and that its billing rates and requested fees are reasonable. (*Id.*).

1.   *Reasonable Hourly Rates*

Plaintiffs do not challenge H&K's hourly rates. Even so, I reviewed them and find that they require a downward adjustment. H&K wants rates of $576 to $670 for partners, $305 to $450 for junior/senior associates, $235 to $240 for paralegals, and $290 to $360 for an eDiscovery specialist. (ECF Nos. 255-4, 255-5). These rates are higher than those that Courts in this District have found reasonable. *See, e.g., TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *10 (S.D. Fla. Apr. 11, 2018), *report and recommendation adopted sub nom.* 2018 WL 3109624 (S.D. Fla. Apr. 30, 2018), *amended*, No. 15-CV-61741, 2018 WL 2672391 (S.D. Fla. June 5, 2018) (finding instructive declaration "regarding the prevailing market rates for partners ($400-$500),

junior/senior associates ($150-$300), and paralegals ($75-$125) in South Florida," and reducing the requested rates accordingly).

The positions, rates, and experience of H&K's core group of timekeepers is as follows:

1.      Gregory A. Baldwin, litigation partner; rate of $576 to $670 an hour. Baldwin has over 45 years of litigation experience. (ECF No. 255-4 at 22). At the beginning of the case, February 2013, he had approximately 39 years of experience. H&K discounted his rate by 10% (from $640 to $576) at the beginning of the case and increased his rate once, but also discounted the increased rate by 10% (from $745 to $670). (ECF No. 255 at 13). He billed 2,585.9 hours at the district-court level, but Defendants request compensation for 2,262.6 district-court hours. (ECF No. 282-1 at 1). He also billed 310.4 hours at the appellate level, but Defendants ask for compensation for 38.8 appellate hours. (ECF No. 282-1 at 2).

2.      Eduardo A. Ramos, litigation partner; rate of $454.50 to $527 an hour. Ramos has 22 years of litigation experience, (ECF No. 255-4 at 22), so at the start of the case, he had 16 years of experience. H&K discounted his rate by 10% ($505 to $454.50) at the beginning of the case and increased his rate once but discounted the increased rate by 15% (from $615 to $527). (ECF No. 255 at 13). He billed 2,791.1 hours at the district-court level, but Defendants request compensation for 2,443.3 district-court hours. (ECF No. 282-1 at 1). He also billed 211.3 hours at the appellate level, but Defendants ask for compensation for 26.1 appellate-court hours. (ECF No. 282-1 at 2).

3.      Ilene Pabian, appellate partner; rate of $427.50 to $610. Pabian has 24 years

32

of appellate experience, (ECF No. 255-4 at 22), so at the beginning of the case she had 18 years of experience. H&K discounted her rate for the appeal by 10% (from $475 to $427.50). (ECF No. 255 at 13). She billed 1,133.5 hours at the trial level, but Defendants request compensation for 991.8 hours. (ECF No. 282-1). She also billed 783.6 hours at the appellate level, but Defendants request compensation for 98 appellate-court hours. (ECF No. 282-1 at 2).

4.      Da'Morus Cohen, litigation associate; rate of $305 to $450 an hour. According to the Florida Bar website, he was admitted to the Florida Bar in 2010. He was involved in the case from its inception, which means that he began work as third year associate. His rate increased every year and was not discounted. He billed 1,136.2 hours, but Defendants request compensation for 994.2 hours. (ECF No. 282-1). He also billed 384.9 hours at the appellate level, but Defendants seek compensation for 48.1 appellate-court hours.

5.       Michael D. Redondo, litigation associate; rate of $305 to $410 an hour. He obtained his Juris Doctor in 2010 and began working at H&K that year, until 2016. He was involved in the case from the start, starting as a third-year associate. His rate also increased every year and was not discounted. Redondo only billed district-court hours—a total of 152.9—and Defendants request compensation for 133.8. (ECF No. 282-1).

6.      Douglas H. Lehtinen, litigation associate; rate of $350 an hour. When he replaced Redondo, Lehtinen was a first-year associate. His rate was not discounted and did not rise. Lehtinen only billed district-court hours—a total of 579.1—and Defendants request compensation for 506.7. (ECF No. 282-1 at 1).

7.      Denise L. Perlich, paralegal; rate of $235 to $240 an hour. She has had legal assistant/paralegal experience since 1995 and has been a paralegal at H&K since 2000. Perlich billed only district-court hours—a total of 822.8—and Defendants asked to be compensated for 719.5. (ECF No. 282-1 at 1).

8.      Marta M. Urra, paralegal; rate of $235 to $240 an hour. She has had legal assistant/paralegal experience since 1996 and was a paralegal at H&K from 2008 to 2019. Urra billed only district-court hours—a total of 306.8—and Defendants request compensation for 268.5. (ECF No. 282-1 at 2).

9.      Sally K. Stauffer, paralegal; rate of $240 an hour. She has worked as a paralegal since 1987 and was a paralegal at H&K from 1996 to 2019. Stauffer billed only district-court hours—a total of 672—and Defendants ask to be compensated for 588.2. (ECF No. 282-1 at 2).

10.     Thuy M. Pham, eDiscovery/IT specialist; rate of $290 to $360 an hour. He obtained a Juris Doctor in 2008 but is licensed to practice law only in Texas. He has been an eDiscovery Project Manager for H&K since June 2013. His rate was not discounted. Pham billed only district-court hours—a total of 179.6—and Defendants request compensation for 157.4. (ECF No. 282-1 at 2).

Starting with Baldwin ($576 to $670 an hour), attorneys of comparable seniority have "generally been awarded $400-$500/hour in this district." *Graves v. Plaza Med. Centers, Corp.*, No. 1:10-23382-CV, 2018 WL 3699325, at *5 (S.D. Fla. May 23, 2018), *report and recommendation adopted*, No. 10-23382-CIV, 2018 WL 3697475 (S.D. Fla. July 13, 2018). Baldwin is a very experienced attorney, and he, along with his team,

achieved excellent results in a lengthy and complex case. In the context of fee-shifting, I think it is reasonable to assign an hourly rate to Mr. Baldwin at the high end of that range: $500. For the requested 2,301.4 hours of Baldwin's work, that comes to $1,150,700 of compensable time.

As to Ramos ($454.50 to $527 an hour) and Pabian ($427.50 to $610 an hour), reductions are also warranted. *See Graves*, 2018 WL 3699325, at *5 n.7 (noting counsels' evidence "that the average hourly rate for an attorney with 20 years of experience in Miami is $456"); *see also BMC Bus. Overseas Corp. v. Incasa LLC*, No. 17-24046-CIV, 2019 WL 1897804, at *3 (S.D. Fla. Feb. 15, 2019), *report and recommendation adopted*, No. 17-24046-CIV, 2019 WL 1897678 (S.D. Fla. Feb. 27, 2019) (approving rate of $435 per hour for attorney with 15 years of experience). I recommend that the Court award an hourly rate for Ramos and Pabian of $450 an hour.

Defendants request compensation for 3,559.20 hours collectively billed by Ramos (2,443.3 at trial and 26.1 on appeal) and Pabian (991.8 at trial and 98 on appeal). Pabian's 98 appellate-work hours were billed at less than $450 an hour: $427.50 an hour, for a total of $41,895. The Court need not reduce that requested compensation. But the remaining 3,461.2 hours were billed at more than $450 an hour: $454.50 to $595 an hour. Reducing those rates to $450 an hour comes to $1,557,540 (3,461.2 hours at $450 an hour). When the $41,895 of Pabian's appellate work is tacked on, that results in $1,599,435 of compensable time.

Associates Cohen ($305 to $450 an hour) and Redondo ($305 to $410) have both practiced law since 2010. Associates of comparable experience are typically compensated

at $300 an hour. *See, e.g., Garcia v. United Recovery Sols., Inc.*, No. 17-CV-81199, 2018 WL 3701151, at *3 (S.D. Fla. July 16, 2018), *report and recommendation adopted*, 2018 WL 4409981 (S.D. Fla. Aug. 1, 2018) (awarding rate of $300 an hour (from $350) for attorney with seven years of experience licensed in several jurisdiction and several federal courts). I recommend the same here: $300 an hour for both. For the requested 1,176.1 hours of Cohen's and Redondo's collective work, that comes to $352,830 of compensable time.

As for Lehtinen, who began as a first-year associate on the case, $350 an hour is too high, and I recommend an hourly rate of $250 an hour. For the requested 506.7 hours of Lehtinen's work, that comes to $126,675 of compensable time.

Concerning the paralegals, who billed between $235 and $240 an hour, I find those rates too high, as well. *See Estrada v. FTS USA, LLC*, No. 14-23388-CIV, 2018 WL 3697491, at *10 (S.D. Fla. July 20, 2018), *report and recommendation adopted*, 2018 WL 4777160 (S.D. Fla. Aug. 9, 2018) (noting that paralegal rate of $185 to $215 is "unacceptably high"). Based on my own experience and recent cases, a range of $125 to $175 is reasonable. *See, e.g., H.C. v. Bradshaw*, No. 18-CV-80810, 2019 WL 5079773, at *6 (S.D. Fla. Oct. 10, 2019) (approving hourly rate of $150 while citing to cases approving rates between $125 to $175). Given the paralegals' decades of experience, I recommend a rate at the high end of the range, $175, for all three paralegals. For the requested 1,576.2 hours of the paralegal's work, that comes to $275,835 of compensable time.

Lastly, as to Pham, the eDiscovery/IT specialist who billed at a rate of $290 to $360 an hour, I find a rate of $225 to be reasonable. *See TYR Tactical*, 2018 WL 3110799, at *10 (awarding $225 an hour for "eData associates"). That comes to $35,415 of potentially

compensable work for his 157.4 hours of billed time.

In total, before reducing the actual hours, reducing the hourly rates as I recommend would reduce Defendants compensation by $144,695.

### 2.    *Reasonable Hours*

Plaintiffs argue that Defendants' fees and proposed reductions are unreasonable. Plaintiffs focus on just three *Rowe* factors: (1) the time and labor required, (2) whether the fee is fixed or contingent, and (3) the undesirability of the case. (ECF No. 262 at 6–8). I address each factor in turn.

First, Plaintiffs argue that because *their* counsel billed approximately 2,800 hours for the "same work," it is unreasonable for Defendants to have billed 12,000 hours and then ask for 9,277-hours' worth of compensation. (*Id.* at 6). Plaintiffs are highly critical of Defendants' counsel, who they accuse of engaging in a "billing extravaganza." (*Id.* at 6–7). They also criticize defense counsel's staffing of the same, which Plaintiffs contend was the "epitome of inefficiency." (*Id.* at 8).

I am unpersuaded by Plaintiffs' argument for several reasons. First, AIS asked for fees generated by *11 timekeepers* from two firms, while Defendants seek fees from *10 timekeepers* at one firm. Plaintiffs cannot say that it was reasonable for them to have 11 individuals and two firms work on this case but unreasonable for Defendants to have 10 individuals and one firm working on it. Moreover, that H&K employed 26 other timekeepers is of no moment because Defendants voluntarily discounted that time, which did not even reach 300 hours in total. (ECF No. 255 at 10).

The declaration of Defendants' fee expert supports H&K's staffing. As he lays out,

"the number of core timekeepers billing at any given time was usually no more than seven to eight professionals, except for the several months of trial preparation and actual trial, when an extra paralegal was added to the team." (ECF No. 255-3 at 7 ¶ 10). He continues that although "this would be a relatively large team for a standard litigation matter, this case was far from standard litigation." (*Id.*). And he also explained how "[t]he number of professionals on the core team in this case was, in my opinion, not only justified but also essential, given the sheer magnitude of the matter, the money at stake, the multifaceted legal and factual issues, and the onerous time demands of the case." (*Id.*).

Second, Morgan & Morgan's claimed hours are a poor measuring stick here, given that they were created years after-the-fact and which Morgan & Morgan admits are missing "countless additional hours." (ECF No. 257 at 7).

Third, the Court does not automatically assume that two firms on opposite sides of the same case must have done the "same work," and this record does not support that assumption.

Fourth, that Morgan & Morgan attorneys only met or saw three H&K attorneys is irrelevant. Not all lawyers attend hearings and depositions or engage with opposing counsel (or even the client). Front-of-the-house lawyers are often supported by the research, writing, and analysis of colleagues. Had H&K flooded depositions and hearings and attorney meetings with all timekeepers, then AIS would have reason to complain that H&K was not effectively manning the file.

Fifth, Plaintiffs' personal attacks against H&K, and more generally billable-hour firms, are not helpful. *See Norman*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("Generalized

statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight."). Just as fee applicants have the obligation to exercise billing judgment, "[t]hose opposing fee applications have obligations, too." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). They should raise objections that are "specific and 'reasonably precise.'" *Id.* (quoting *Norman*, 836 F.2d at 1301). "Failing to lodge specific objections is generally deemed fatal." *Woliner v. Sofronsky*, No. 18-CV-8030, 2019 WL 163340, at *3 (S.D. Fla. Jan. 10, 2019).

Here, Plaintiffs did not raise one specific objection to a particular H&K time entry. Moreover, apart from cases that set forth the general standard for awarding fees, Plaintiffs do not cite to a single case in support of their opposition. Rather, they lob unspecified objections and then demand a 50% to 75% reduction in H&K's fees, without any support. (ECF No. 262 at 10). That falls well short of their obligation. *See Barnes*, 168 F.3d at 428.

Sixth, Plaintiffs' plea to "[c]ommon sense," (ECF No. 262 at 10), is unavailing. H&K is not seeking a nonsensical award; although the fees sought are large, they are consistent with lengthy and complex commercial litigation. "District courts do not hesitate to award substantial fee awards when the circumstances warrant it." *See, e.g., Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2017 WL 3536917, at *33 (S.D. Fla. Aug. 17, 2017) (awarding over $18 million in fees and nontaxable costs for litigation lasting four-and-a-half years and collecting cases awarding fees between $14 million and $27 million).

Defendants' brief overview of their legal work illustrates why a substantial award is warranted here:

The defense of this case required the vacatur of a $50 million default

judgment, secured only after time-consuming and complex analysis of key contract documents and complicated jurisdictional issues, and the drafting of multiple district court motions and a multifaceted appellate brief. It also required, as noted above, extensive document review and production, review of thousands of pages of party and third-party documents (mostly in Spanish), intensive motion practice to secure Sun Land's missing financial documents, interviews of numerous Spanish-speaking-only witnesses, and preparation for and taking or defending of 12 depositions (6 requiring interpreters). And preparing the defense expert witness and report required substantial additional time due to Plaintiffs' failure to produce almost any substantive financial records. Preparing for and conducting the eight-day bench trial alone required a month of intense pre-trial work to prepare hundreds of trial exhibits and witness and expert testimony, plus drafting the Court-ordered proposed pre- and post-trial findings of fact and conclusions of law.

(ECF No. 255 at 14–15). Defendants also point out, correctly, that they received "outstanding" results, which further justifies their fee. (*Id.* at 15).

As to the second *Rowe* factor (the fixed or contingent nature of the fee), Plaintiffs do not say much: only that "Defendants had a fixed hourly fee arrangement, meaning there was zero risk of nonpayment," which "weighs in favor of reducing the claim." (ECF No. 262 at 7). Of course, contingency fees rarely exist on the defense side, but I do not believe this factor means that hourly rate defense fees should always be reduced for this reason alone. Here, given the reasons set forth under the first *Rowe* factor, as well as the brevity of Plaintiffs' argument about this factor, I find that it does not warrant a reduction of H&K's fees.

As for the last factor (the desirability of the case), Plaintiffs are equally brief. They claim that this case was "perhaps the most desirable type of case for an hourly defense firm" because it involved "a well-funded client . . . facing a large damage claim." (*Id.* at 8). Plaintiffs continue, "[a]ny hourly firm in Florida would have happily taken the case,

meaning the Defendants had no shortage of options," which would justify reducing defense fees. (*Id.*).

I disagree with Defendants that this factor is irrelevant for the defense side. (ECF No. 264 at 9). Defendants cite to no case that says so. Defendants apparently were willing to spend significant amounts in legal fees to save themselves from a $50 million default judgment, making this case desirable to a premium-priced, billable-hour firm. But as is the case with factor two, and for the same reasons, I do not find that this factor merits reducing H&K's fees.

In sum, I agree with Defendants that a fifteen percent across-the board reduction is appropriate and find that no further hourly reductions are necessary.

3.    *Apportionment of Fees*

Last, Defendants propose that the Court apportion the fees between them as follows: 75% paid the DR and one half of 25% paid to INDRHI. Defendants submit that the parties spent roughly 25% of the case litigating the construction of the underlying project, which implicated INDRHI, and 75% litigating the financing of the project, which implicated the DR. (ECF No. 255 at 5–9). INDRHI is not entitled to recover its fees against AIS, and Defendants therefore suggest that INDRHI "be awarded against Sun Land only half of its total 25% of allocated fees." (*Id.* at 8).

Plaintiffs say that Defendants' proposed split is "entirely backwards." (ECF No. 262 at 8). According to Plaintiffs:

> The claims were literally for breach of a construction contract, and involved extensive scope, delay, and performance analyses. The "financing" portion was just an argument on who had to pay for the construction. If anything,

> Defendants have the proportions entirely backwards, as the majority of this case was spent litigating construction issues against both Defendants.

(*Id.*). That is the sum total of their argument.

The Court has "wide discretion in determining when to apportion fees and how to divide liability." *Centeno v. Santos Furniture Custom Design, Inc.*, No. 09-23024-CIV, 2012 WL 13008328, at *1 (S.D. Fla. June 4, 2012). The goal with apportionment is "to achieve the most fair and sensible solution as possible" when a different method would be untenable. *Id.*

I find that Defendants have convincingly explained why their proposed split is both fair and reasonable. (ECF No. 255 at 7–9). By contrast, Plaintiffs' broad-brush challenge to the proposed apportionment is not helpful, as is the absence of a proposal for a different split.

In the proposed calculation of fees that Defendants set forth in their motion, Defendants applied the 75/25 apportionment, and the reduction of INDRHI's portion of those fees by half, the latter to account for the fact that INDHRI was not entitled to recover fees from AIS. Defendants also applied their proposed 15% across-the-board reduction to the hours billed. After applying the apportionment and the reductions, Defendants asked that the DR recover attorneys' fees in the amount of $3,062,056 and that INDRHI recover attorneys' fees in the amount of $581,634, for a total attorneys' fee award to Defendants of 3,643,690. (ECF No. 255 at 16-18). I further reduce those amounts by $144,695, the amount that reflects the reduction of defense counsel's hourly billing rates. *See supra* Section E(1) pp. 31-37. This causes the DR's fees to be reduced by $108,521.25 (144,695

x .75) and INDRHI's fees to be reduced by $36,173.75 (144,695 x .25). After applying these reductions, I conclude that the DR is entitled to an attorneys' fee award of $2,953,534.75 and INDRHI is entitled to an attorneys' fee award of $545,460.25.

In sum, I recommend that fees be apportioned as Defendants request and that the Court award, after the reductions in the rates that I recommend are applied, $2,953,534.75 to the DR from both Plaintiffs and $545,460.25 to INDRHI from Sun Land, which totals $3,498,995.

### F.   *Defendants' Requested Non-Taxable and Taxable Costs*

Defendants request $629,451 in nontaxable costs. (ECF Nos. 255 at 18, 255-8). Defendants say they actually incurred $741,592 in nontaxable costs but subtract costs they are not entitled to recover. *Id.* They also apply the same 75/25 apportionment to the costs. (*Id.*).[18] In addition, Defendants applied a 10% discount to the travel costs to remove travel time spent on non-compensable issues, because "it is impossible to identify how much of the travel costs can be attributed directly to such discussions." (*Id.* at 19).

Defendants provide a chart that, along with the reductions, outlines five categories of costs—they are: "Document translations" ($128,021); "Travel costs" ($42,338); "Expert witness fees" ($395,022); "Electronic database costs" ($6,026); and "Westlaw costs" ($58,044). (ECF No. 255-8). Defendants also detail how and why the costs were incurred

---

[18] Defendants say that the apportionment is applied to all costs "except travel costs," (ECF No. 255 at 18); however, save for an initial 10% reduction to the travel costs, Defendants applied the same breakdown. (ECF No. 255 at 19) ("The total travel costs were $52,923 which, after a 10% reduction, are $47,631. The DR claims 75%, or $35,723 against both Plaintiffs; INDRHI claims one half of 25%, or $6,615 against Sun Land; for a total of $42,338.").

within each category, (ECF No. 255 at 18–20), and provide invoices for the costs (ECF No. 255-7).

After the 10% reduction in travel costs and 75/25 apportionment, both Plaintiffs would pay $538,962 to the DR and Sunland would pay $90,489 to INDRHI. (ECF No. 255 at 20).

Defendants also request $33,079.12 in taxable costs. (ECF No. 256). These costs are for the clerk and marshal ($918.75 for 17 subpoenas);[19] printed or electronically stored transcripts ($16,952.89); copying, printing, and exemplification ($9,597); and interpreters ($5,610.48). (*Id.*). Defendants ask the Court to apportion these costs in the same 75/25 manner: both Plaintiffs pay $28,353.53 in taxable costs to the DR and Sunland pays $4,725.59 to INDRHI. (ECF No. 256-1 at 3).

Plaintiffs did not file any opposition to Defendants' claim for taxable costs, and their response to Defendants' motion for fees and nontaxable costs addressed only the request for attorneys' fees, (ECF No. 262). Plaintiffs' lack of opposition "may be deemed sufficient cause for granting the motion by default." S.D. Fla. L. R. 7.1(c); *see also Brown v. Pub. Health Tr. of Miami-Dade Cty.*, No. 1:18-CV-21457-UU, 2019 WL 1112373, at *1 (S.D. Fla. Feb. 1, 2019) (awarding costs where there was no opposition and that the movant was entitled to costs as a prevailing party).

Also, Defendants justified their costs by explaining the basis for them and providing documentary evidence. This, together with Plaintiffs' lack of opposition, leads me to

---

[19] Defendants properly reduced the costs of those subpoenas where the service cost exceeded the $65 the US Marshal charges. (ECF No. 256-1 at 3–4).

recommend that the Court award Defendants $629,451 in nontaxable costs ($538,962 to the DR from both Plaintiffs and $90,489 to INDRHI from Sun Land) and $33,079.12 in taxable costs ($28,353.53 to the DR against both Plaintiffs and $4,725.59 to INDRHI from Sun Land).

### III.    Recommendations

Based on the foregoing, I recommend that the Court **grant in part** and **deny in part** Defendants' Amended Verified Motion for Attorneys' Fees and Non-Taxable Costs, (ECF No. 255); **grant** Defendants' Amended Bill of Costs (ECF No. 256); and **grant in part** and **deny in part** AIS's Renewed Verified Motion for Award of Attorneys' Fees and Costs, (ECF No. 257), as follows:

1.    **Deny** all attorneys' fees attributable to Gray Robinson.

2.    **Award** AIS **$248,214.69** in attorneys' fees against INDRHI, reached by applying to Morgan & Morgan's claimed fees a 75% across-the-board reduction: 50% due to AIS's very limited success and 25% due to Morgan & Morgan's unreliable and block-billed time records.

3.    **Deny** AIS a contingency-fee multiplier given AIS's very limited success.

4.    **Award** AIS **$302,127.56** in nontaxable costs against INDRHI.

5.    **Deny without prejudice** AIS's request for prejudgment interest with leave to refile.

6.    **Award** Defendants **$3,498,995** in attorneys' fees apportioned as follows: **$2,953,534.75** to the DR against both Plaintiffs and **$545,460.25** to INDRHI against Sun Land.

7.     **Award** Defendants **$629,451** in nontaxable costs apportioned as follows: **$538,962** to the DR from both Plaintiffs and **$90,489** to INDRHI from Sun Land.

8.     **Award** Defendants **$33,079.12** in taxable costs apportioned as follows: **$28,353.53** to the DR from both Plaintiffs and **$4,725.59** to INDRHI from Sun Land.

## IV.   Objections

**No later than ten days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable K. Michael Moore, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in chambers in Miami, Florida this 16th day of April 2020.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable K. Michael Moore
       Counsel of record